UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SELMA SINGLETON, | : | CIVIL ACTION NO. |
|     Plaintiff, | : | 3:13-CV-00409 (VLB) |
| | : | |
| v. | : | |
| | : | |
| UNITED PARCEL SERVICE, INC., | : | |
|     Defendant. | : | March 11, 2014 |

**MEMORANDUM OF DECISION GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO FILE A SECOND AMENDED COMPLAINT [Dkt. 21] AND DENYING DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT [Dkt. 19]**

I. **Procedural History**

Plaintiff Selma Singleton's original complaint was filed in the Connecticut Superior Court and was removed to this Court on March 26, 2013 on the basis of this Court's diversity jurisdiction. Three days later, on March 29, 2013, the Defendant filed a motion to dismiss Singleton's original complaint. In response, and pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), Singleton timely filed her First Amended Complaint on April 8, 2013, asserting claims for perceived disability discrimination pursuant to the Connecticut Fair Employment Practices Act ("CFEPA"), "regarded as" disability discrimination pursuant to the Americans with Disabilities Act ("ADA"), and retaliation for exercise of her rights under Connecticut's Workers' Compensation Act. On April 19, 2013 UPS moved to dismiss Plaintiff's CFEPA and ADA claims pursuant to rule 12(b)(6) for failure to state a claim. Rather than filing an opposition to the Defendant's Motion to

1

Dismiss, Singleton has filed a Motion pursuant to Rule 15(a)(2) to amend the First Amended Complaint in order to clarify her factual allegations as to her CFEPA and ADA claims.  The Defendant opposes such amendment.

For the reasons that follow, the Court GRANTS Plaintiff leave to amend her ADA claim and DENIES her request to amend her CFEPA claim.

## II.     Standard of Review

Federal Rule of Civil Procedure 15, which governs Amended and Supplemental Pleadings, provides that a party may amend a pleading at this juncture "only with the opposing party's written consent or with the court's leave," which should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, "it is within the sound discretion of the district court to grant or deny leave to amend."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  A court should deny leave to amend only upon a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment."  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 87 (2d Cir. 2002) (same).  "Granting leave to amend is futile if it appears that plaintiff cannot address the deficiencies identified by the court and allege facts sufficient to support the claim."  *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 347 F. App'x 617, 622 (2d Cir. 2009).  A proposed amendment is also futile if it could not withstand a motion

to dismiss pursuant to Rule 12(b)(6).  *Dougherty*, 282 F.3d at 88.  *See also Basile v. Connolly*, 538 F. App'x 5, 8 (2d Cir. Sept. 3, 2013) ("while a district court generally should not dismiss a pro se complaint without granting the plaintiff leave to amend, such leave is not necessary when it would be futile.").

   III.   Analysis

   a.   Perceived Disability Pursuant to the ADA

UPS opposes Singleton's bid to re-allege her discrimination claim on the basis of perceived disability under the Americans with Disabilities Act.  UPS argues that Plaintiff, "[r]ecognizing that her ADA claim, as pled in the first Amended Complaint, is clearly subject to dismissal under the statute's 'transitory and minor' exception, [ ] now attempts to alter the factual allegations to avoid dismissal.  The result is a facially inconsistent factual narrative that still fails to satisfy the ADA's requirements for a claim of 'regarded as' disability discrimination."  [Dkt. 23, p. 6].  Singleton counters that she has sufficiently pled a cognizable ADA claim in that her injury was neither transitory nor minor, and that disposition of her ADA claim based on the Defendant's transitory and minor defense is inappropriate on a motion to dismiss.

The Court disagrees with both of Defendant's contentions and finds that Plaintiff's ADA claim as amended is not clearly subject to dismissal under Rule 12(b)(6), nor is the amended factual narrative facially inconsistent with the First Amended Complaint.

3

**To establish a prima facie case of disability discrimination arising from an adverse employment action, a plaintiff must show "(a) that his employer is subject to the ADA; (b) that he is disabled within the meaning of the ADA or perceived to be so by his employer; (c) that he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (d) that he suffered an adverse employment action because of his disability."** *Brady v. WalMart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008).

**The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C)** *being regarded as having such an impairment.*" 42 U.S.C. § 12102(1). "An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).[1]

**However, an individual does** *not* **satisfy the requirement of "being regarded as having such an impairment" if the impairment is "transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6**

---

[1] In 2008 Congress amended the ADA. Prior to January 1, 2009, when the ADA Amendments Act went into effect … a plaintiff "seeking to avail himself of the 'regarded as' prong of the definition of 'disability' needed to show that he was perceived as both 'impaired' and 'substantially limited in one or more major life activity.'" *Hilton v. Wright*, 673 F.3d 120, 128 (2d Cir. 2012) (discussing ADA Amendments Act).

4

months or less." 42 U.S.C. § 12102(3)(B).[2]  The ADA's implementing regulations clarify that "[b]eing regarded as having such an impairment" means "that the individual has been subjected to an action prohibited by the ADA as amended because of an actual or perceived impairment that is not both 'transitory and minor.'"  29 C.F.R. § 1630.2(g)(iii).  The regulations further classify the "transitory and minor" exception as a defense:

> It may be a defense to a charge of discrimination by an individual claiming coverage under the 'regarded as' prong of the definition of disability that the impairment is (in the case of an actual impairment) or would be (in the case of a perceived impairment) 'transitory and minor.'  To establish this defense, a covered entity must demonstrate that the impairment is both 'transitory' and 'minor.'  Whether the impairment at issue is or would be 'transitory and minor' is to be determined objectively.  A covered entity may not defeat 'regarded as' coverage of an individual simply by demonstrating that it subjectively believed the impairment was transitory and minor; rather, the covered entity must demonstrate that the impairment is (in the case of an actual impairment) or would be (in the case of a perceived impairment) both transitory and minor.  For purposes of this section, 'transitory' is defined as lasting or expected to last six months or less.

29 C.F.R. § 1630.15(f).

In her First Amended Complaint (in response to which UPS filed its Motion to Dismiss and which Singleton would like to amend), Singleton alleges that on January 17, 2011 she "was injured in a car accident and took short term disability leave" from her position as a pre-load supervisor; while out, she was involved in a second car accident on March 19, 2011, injuring her "still further." [Dkt. 18, 1st Am. Compl. ¶12].  She was released to return light duty work on July 18, 2011, but

---

[2] The full text of this subsection reads: "Paragraph (1)(C) shall not apply to impairments that are transitory and minor.  A transitory impairment is an impairment with an actual or expected duration of 6 months or less."

UPS would not allow her to do so. [*Id.* at ¶¶14, 19]. She returned to work on October 3, 2011 in a full duty capacity. [*Id.* at ¶20]. On November 15, 2011, Singleton was injured on the job after moving a box weighing around 100 pounds. [*Id.* at ¶21]. She visited a doctor who diagnosed her with a cervical strain and returned to work the next day, notwithstanding her injury. [*Id.* at ¶¶23-24]. She initially performed only light-duty tasks but "within two weeks, with the full knowledge of her supervisors, she resumed all aspects of her work," including manual labor duties. [*Id.* at ¶¶26-27].

On January 10, 2012, she received a letter from UPS "advising her that its records indicated that she was 'unable to perform the essential functions of [her] position' and stating to her that, if she needed an accommodation, she should request one." [*Id.* at ¶29]. She did not request an accommodation because, "notwithstanding her injury, not only was she fully performing her job, she was even performing the manual labor her subordinates performed." [*Id.* at ¶30]. She informed UPS's nurse practitioner of this reason for not requesting an accommodation on February 8, 2012. [*Id.* at ¶¶31-32]. Shortly thereafter, the nurse practitioner and a human resources representative met with Singleton and "informed her that she was being terminated because she 'was not getting any better,' noting that the [ ] doctor [treating her injury] continued to provide her with a ten pound weight restriction." [*Id.* at ¶36]. Singleton informed them that she was "much improved and that the only reason the doctor continued the weight restriction was because she had not yet completed her physical therapy." [*Id.* at

¶37]. Plaintiff was terminated on February 9, 2012, and less than one month later her doctor released her for full capacity work. [*Id.* at ¶11, 39].

UPS has argued in its Motion to Dismiss that Plaintiff's allegations only demonstrated a transitory and minor impairment, thus negating any "regarded as" disability claim under the ADA. UPS alleges that Plaintiff's injury from the two automobile accidents as pled in this complaint are not at issue, as she alleges that she fully recovered from those accidents and returned to full capacity work. [Dkt. 20, MTD p. 11]. Thus, the cervical strain suffered on November 15, 2011 was transitory because it lasted less than six months and Singleton performed light duty tasks for only two weeks before allegedly recommencing all functions of her job, including manual labor, and being cleared to work at full capacity in March 2012. [*Id.* at pp.11-12]. The duration of the impairment was, according to UPS, three and a half months and thus transitory. UPS also argues that Plaintiff's impairment was minor in that Plaintiff has alleged that she missed no work as a result and returned to work the day after her injury. She also declined UPS's offer of a workplace accommodation. [*Id.* at p. 12].

Plaintiff's Proposed Second Amended Complaint clarifies her factual allegations in response to UPS's Motion to Dismiss by adding certain details. First, Singleton clarifies that, as a result of her two car accidents, she suffered back and neck injuries, a detail that she omitted from the First Amended Complaint. [Dkt. 22-1, Prop. 2nd Am. Compl. ¶13]. She further alleges that these injuries "resulted in a leave of absence from work, with the plaintiff returning to light duty on July 18, 2011, and to full duty on October 3, 2011," and that "the

7

November 15 injury aggravated the existing injury caused by the automobile accidents."[3]  [*Id*. at ¶¶14-15].  Despite returning to work the next day and despite "her performance of her full duties, however, the plaintiff continued to experience pain in her back and neck" and started physical therapy in January 2002.  [*Id*. at ¶¶23-24].  Singleton has also amended her complaint to add more detail regarding the January 10, 2012 letter from UPS, which stated

> Our records reflect that you have been unable to perform the essential functions of your part-time preload supervisor position since January 18, 2011, and that you have been working on residual disability pursuant to the Income Protection Plan since November 15, 2011.  While you did return to work on October 4, 2011, you did not work 30 calendar days before you begun [sic] working residential duty on November 18, 2011.

[*Id*. at ¶25].  Although Singleton did not request an accommodation as the letter encouraged her to do, she alleges that she "continued to experience substantial pain in her back and neck."  [*Id*. at ¶27].

Here, Plaintiff's Proposed Second Amended Complaint pleads an impairment that is not facially transitory or minor.  Plaintiff suffered back and neck injuries as a result of two car accidents in January and March 2011.  She returned to work in October 2011 after an absence of eight and one half months and, while still experiencing back and neck pain, worked full duty for one and a half months; she then injured her back and neck a third time while lifting a box at work on November 15, 2011.  Although she returned to work the following day

---

[3] Singleton alleges in her First Amended Complaint that she was cleared and attempted to return to light duty work on July 18, 2011 but UPS did not allow her to return to work until she was cleared for full duty work, which was on October 3, 2011.

8

and two weeks later resumed her full duties, Singleton alleges that she continued to experience back pain and that UPS believed her to not be getting any better. Further, UPS stated in a letter to Singleton on January 10, 2012 that Singleton had been unable to perform the essential functions of her job since January 18, 2011, or for the full year prior.

Plaintiff's injuries from her two car accidents and the box incident are facially consistent and Plaintiff has sufficiently alleged that UPS believed them to be – at least for purposes of a 12(b)(6) motion – one ongoing back and neck impairment. Plaintiff was out of work with a back and neck injury for nearly nine months after her car accidents. She returned to work for a little more than one month before injuring her back again, and was then terminated after being informed that she had been unable to perform the functions of her job for the twelve months prior. These allegations sufficiently allege an impairment lasting more than six months. Moreover, because the transitory and minor exception to discrimination under the regarded as disabled prong is a defense whose applicability the Defendant must prove, because Plaintiff has facially pled a non-transitory injury, and because there is not yet a record on which this Court may base any other decision in this case, it is inappropriate for this Court to make factual determinations as to the actual duration or extent of Singleton's injury at this stage. Rather, this defense is appropriate for adjudication at the summary judgment stage. *See, e.g., Davis v. Vermont, Dep't of Corr.*, 868 F. Supp. 2d 313, 327 (D. Vt. 2012) (noting that dismissal of regarded as disabled claim would be

appropriate only "[t]o the extent that this defense is apparent from the face of the complaint," and denying dismissal where it was not).

UPS has also opposed Singleton's Motion to Amend because it believes that Singleton has artificially linked her car accident and box injuries as these injuries were not equivalent.  UPS argues that, in fact, the back and neck injuries stemming from Singleton's car accidents are not the same type of injury as that stemming from her box incident, which was diagnosed as a "cervical strain."  The Defendant apparently believes this to be the case because it is defining "cervical strain" as an injury to a woman's cervix.  While the term "cervical" is defined as "of or relating to a neck or cervix," (Merriam-Webster Dictionary, *available at* http://www.merriam-webster.com/dictionary/cervical) the Court notes for purposes of clarity that a cervical strain more commonly refers to an injury of the cervical spine and not an injury to a woman's reproductive anatomy.  *See, e.g.*, Warren Magnus, DO, *Cervical Strain*, *available at* http://emedicine.medscape.com/article/822893-overview.  Thus, it is not unreasonable to characterize a cervical strain as a back or neck injury, and Singleton's characterization of her injuries is neither erroneous nor inconsistent.

The Court thus cannot find that Singleton's proposed amended ADA claim is futile, as this Court holds that it would survive a motion under Rule 12(b)(6).  The Court further finds that the Plaintiff has not exhibited bad faith or dilatory motive in attempting to amend her ADA claim.  Nor has UPS demonstrated that amendment of this claim would cause undue delay; three claims exist in this action, two of which are the subject of the Defendant's Motion to Dismiss and the

10

Plaintiff's Motion to Amend.  The third – a claim for retaliation for Plaintiff's exercise of her rights pursuant to the Connecticut Worker's Compensation Act – is active and will remain so even if this Court denies Plaintiff the opportunity to amend.  Plaintiff also timely moved to amend less than three weeks after the Defendant filed its Motion to Dismiss.  Further, although this amended complaint will be Plaintiff's third pleading and third iteration of her ADA claim, because her proposed amendments constitute a cognizable ADA claim this Court concludes that she has not unduly failed to cure deficiencies by amendments previously allowed.

Plaintiff's Motion to amend her ADA claim is GRANTED.

a. **Connecticut Fair Employment Practices Act**

UPS argues that Plaintiff should not be allowed to amend her operative complaint to re-allege her perceived physical disability claim under the Connecticut Fair Employment Practices Act ("CFEPA") because a perceived disability claim is not cognizable under CFEPA and amendment would thus be futile.  While the Plaintiff has admitted that the CFEPA does not currently recognize a cause of action for a perceived disability claim, she urges this Court to delay ruling on this claim because the Connecticut Supreme Court has certified an appeal on whether a perceived as disability claim is cognizable under CFEPA.

Indeed, under Connecticut law as it currently stands and as both parties agree, a perceived as disabled claim is not recognized under the CFEPA, as the

Connecticut Appellate Court and the Second Circuit have both held. *Desrosiers v. Diageo N. Am., Inc.*, 137 Conn. App. 446, 455 (2012) ("Physically disabled is therefore defined under the provision as any individual who has any chronic physical handicap, infirmity or impairment. There is no language in the provision that supports an interpretation that it includes those who may be regarded as disabled by their employers. Rather, the use of the word 'has' by the legislature evinces the intent to protect those who actually suffer from some type of handicap, infirmity or impairment, not those whose employer may incorrectly regard as being disabled. . . . After examination of the definition of 'physically disabled,' we conclude that the text of § 46a–60 is clear and unambiguous in that it does not cover claims of discrimination based on a perceived physical disability."); *Beason v. United Technologies Corp.*, 337 F.3d 271, 279 (2d Cir. 2003) (holding that perceived as disabled claim was not cognizable under CFEPA as § 46a-51 "makes no mention of prohibiting discrimination on the basis of an individual's perceived physical disability" and legislative history did not support such claim). *See also Buotote v. Illinois Tool Works, Inc.*, 815 F. Supp. 2d 549, 556 n. 8 (D. Conn. 2011) (JBA) ("The CFEPA does not provide for a cause of action for perceived disability discrimination"); *McGee v. New Breed Logistics, Inc.*, 3:09-CV-894 CFD, 2011 WL 2838135 (D. Conn. July 14, 2011) ("there is no cause of action under the CFEPA for perceived disability discrimination"); *Brown v. City of Waterbury Bd. of Educ.*, 722 F. Supp. 2d 218 (D. Conn. 2010) (JCH) (same).

The Connecticut Supreme Court has granted certiorari of the Connecticut Appellate Court's rejection of perceived disability claims under CFEPA in *Desrosiers v. Diageo N. Am., Inc.*, 137 Conn. App. 446 (2012), cert. granted 307 Conn. 916 (Oct. 10, 2012).[4] No ruling has yet been filed. Singleton argues that, although the current weight of authority supports the Appellate Court's holding in *Desrosiers* that Connecticut law does not recognize a perceived as disabled claim, factors "suggest that a broader interpretation [of CFEPA] may carry the day" and thus this Court should allow her to include her CFEPA claim in her proposed Second Amended Complaint.

Singleton cites to no legal authority for the proposition that this Court should wait for a decision from the Connecticut Supreme Court in *Desrosiers* – determination date unknown – instead of applying the law as it currently stands. The present state of the law pursuant to the CFEPA is that a perceived as disabled claim is not legally cognizable. This Court finds no reason to refrain from applying the current law on this issue to the facts as presented in this case. The Court thus DENIES Plaintiff's request to amend her CFEPA claim as such amendment would be futile and any such amendment would not survive a motion pursuant to Rule 12(b)(6). Plaintiff *may* seek further leave to amend in order to re-allege her CFEPA claim *if and only if* the Connecticut Supreme Court rules, in disposition of the appeal in *Desrosiers v. Diageo N. Am., Inc.*, 137 Conn. App. 446

---

[4] The issue certified is as follows: "Did the Appellate Court properly affirm the trial court's granting of summary judgment in favor of the defendant on the basis that Connecticut does not recognize a cause of action for discrimination based on a perceived physical disability?" 307 Conn. at 916.

(2012), cert. granted 307 Conn. 916 (Oct. 10, 2012), that a perceived physical disability claim is cognizable under the CFEPA.

IV.     Conclusion

For the foregoing reasons, Plaintiff's [Dkt. 21] Motion to file an amended complaint is GRANTED IN PART AND DENIED IN PART and Defendant's [Dkt. 19] Motion to Dismiss the First Amended Complaint is DENIED in light of such amendment.  The Plaintiff shall file her Second Amended Complaint – omitting her futile claim for perceived disability discrimination under the CFEPA – as a separate docket entry by March 19, 2014.[5]

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: March 11, 2014

---

[5] The Court notes that Plaintiff's claim for retaliation under Connecticut's Workers' Compensation Act is extant, as that claim was neither the subject of Defendant's Motion to Dismiss nor the subject of Defendant's Opposition to Plaintiff's Motion to Amend.

14